HANKS *v.* PEARCE *et al.*, executors.

1. Unsupported by some such action, or motion, in a judicial proceeding as serves to manifest a purpose upon the part of a plaintiff in execution to insist upon the enforcement of his judgment, or by some other *bona fide* conduct on his part asserting the lien thereof, such as placing the execution in the hands of a levying officer and claiming money thereon, a mere entry by an officer upon the execution is not sufficient to save the judgment from dormancy, unless the entry be made by an officer authorized to execute and return the writ, and unless it likewise contain such a statement by the officer of some material fact responsive to the mandate of the process as would tend either to charge him with, or discharge him from, responsibility to the plaintiff.
2. An entry in the following words: " May 19th, 1875.   Directions from plaintiff's attorney, L. T. Downing, received for the collection of this *fi. fa.*," though made by an officer authorized to execute and return the writ, is a simple statement by him of a merely irrelevant fact, and is neither responsive to the mandate of the pro-

cess, nor tends to charge him with, or discharge him from, liability to the plaintiff; and there having been no other entry upon or action under the execution within seven years from the date of the last preceding lawful entry thereon which would serve to keep it alive, the judgment upon which it issued was dormant.

April 29, 1895. Brought forward from the last term.

Levy and claim. Before Judge BUTT. Muscogee superior court. November term, 1893.

McNEILL & LEVY and F. D. PEABODY, for plaintiff.

.BRANNON, HATCHER & MARTIN and J. H. WORRILL, *contra.*

ATKINSON, Justice.

Section 2914 of the code, which declares how and in what manner and by what means a judgment may be saved from dormancy, has always heretofore received a liberal and equitable construction, the judges early departing from the letter of the statute and interpreting it according to its reason and spirit. Hence, during the long period of its existence as a statute, many occasions have arisen for its application to the facts of particular cases; and accordingly the decisions of this court have taken a wide range in treating this statute and applying it so as to give full force and effect to its remedial intent. While the statute itself says, that to prevent dormancy of a judgment it is requisite that within periods of seven years each an entry upon the execution shall be made by some officer authorized to execute and return it, it has been held by this court that, pending an issue upon the validity of such an execution in a court wherein the same is called in question, the execution does not become dormant until after the expiration of seven years from the determination of this issue, even though in the meantime no entry be made thereon. It has accordingly been held, that where the execution is placed in the hands of an officer while yet alive for the purpose of claiming money raised under other process, the judgment does not become dormant, though more

than seven years elapse between the date of the last en-
try thereon and the final judgment of distribution of the
funds claimed under the execution.   This serves to es-
tablish the principle, that wherever the plaintiff in exe-
cution is engaged in a *bona fide* effort through the agency
of the courts to subject to the lien of his judgment a
fund which is being there administered, or the property
of the defendant upon which it has been levied, such
purpose upon the part of the plaintiff, manifested by
the judicial proceeding, would of itself serve to keep
alive his judgment.  But where, aside from judicial pro-
ceeding looking toward the enforcement or satisfaction
of the judgment, a mere entry is relied upon to prevent
its dormancy, then the entry must be made by some
officer who is charged by law with the execution of the
process, and it must express some such action upon his
part as, being responsive to the mandate of the writ,
would tend to charge him with, or discharge him from,
responsibility to the plaintiff.   With whatever liberality
this court may have construed the section of the code
now under review, it has never yet held that an entry by
an officer not authorized to make it, however relevant
or material, would prevent dormancy of a judgment; nor
has it ever yet decided that an entry containing a state-
ment of facts wholly irrelevant to, and disconnected
from, the mandate of the process, however competent
might be the officer who made it, would save an execu-
tion from dormancy.   While it has been stated gener-
ally to be the rule, that any *bona fide* action of the plain-
tiff which shows that he intends to keep the judgment
alive, will prevent its dormancy, those words are to be
taken in the sense in which they were intended to be
employed.   They do not mean that any private personal
assertion of an intention upon the part of the plaintiff to
keep alive his judgment would serve to accomplish that
result; but they mean such *bona fide* conduct upon the

v 96-11

part of the plaintiff, made manifest upon the public record by the official action of some person charged with the duty of executing the process, or by an appeal to the courts with the object of realizing upon such process. Such an intention so manifested puts the world on notice that the judgment is being enforced, and it is such conduct so manifested as serves to keep the judgment alive. It will be observed that in both of the cases, *Smith* v. *Rust*, 79 *Ga.* 519, and *Gholston* v. *O'Kelley*, 81 *Ga.* 19, which are cited to the proposition just stated, there was an effort upon the part of the plaintiff, through the instrumentality of the courts, to enforce his judgment, and it was such conduct which the court had in view at the time the principle above stated was announced. The question then is, what is the character of entry which will serve to keep a judgment alive, assuming that there has been no other assertion of the judgment lien through judicial process so as to save it from the statute of limitations, and assuming that the entry is made by some officer authorized to execute and return the process. The rule stated in 49 *Ga.* 576, in the case of *Hatcher* v. *Gammell & Co.*, it seems to us is the correct one, which is to the effect that any entry is sufficient which will serve to charge or discharge the officer whose duty it is to execute the process. This is the real test, and ought to be, of the relevancy of an entry. The officer is charged by the mandate of the writ, that of the goods and chattels, lands and tenements of the defendant, he make the amount of money stated in the execution. Any return is a relevant one which tends to establish his responsibility to the plaintiff for a failure to observe the mandate of the court. Any entry would be a relevant one which, on the other hand, would serve to discharge him from responsibility to the plaintiff; and hence we hold the true rule to be, that where an entry alone, unsupported by judicial action, is relied

upon to save from dormancy an execution, that entry must be made by some officer whose duty it is to make the money upon the writ, and of some fact which would tend to charge or discharge him with or from responsibility.

In the present case the dormancy of the judgment is to be determined by the sufficiency of an entry made in the following words: "Directions from plaintiff's attorney, L. T. Downing, received for the collection of this *fi. fa.*" This entry was made by an officer authorized to execute and return the writ. It was made in time to have saved the judgment from dormancy. If it is a sufficient entry, it saves the judgment. If it is insufficient in law, the judgment is dormant. In determining the sufficiency of this return, it will be necessary to inquire whether or not it imposes upon the sheriff any duty in addition to that to which he was already bound. By the mandate of the process he was directed, under the seal of the court, immediately to proceed with the collection of the money due thereon. No more positive direction could be given to an officer to proceed than that contained in the words of the execution: "We command you, that of the goods and chattels, lands and tenements," etc., " you cause to be made," etc. Therefore, the execution being in his hands, he had already received instructions from a higher source than plaintiff's attorney to proceed with the collection of the money. His obligation to proceed with the collection of the *fi. fa.* after he received the instructions from the plaintiff's attorney was no greater than it was before. Hence, the instructions given by the plaintiff's attorney were entirely gratuitous and wholly unnecessary. They imposed no additional duty upon the officer—charged him with no additional responsibility; and therefore the entry of such direction upon the execution could neither serve to charge him with, nor discharge him from, re-

sponsibility to the plaintiff. It was cumulative of and not responsive to the mandate of the writ. Unlike the case of *Hatcher* v. *Gammell & Co.,* 49 *Ga.* 576, *supra,* the return now under consideration only acknowledged the receipt of *directions* from the plaintiff's attorney to proceed with the collection of the *fi. fa.* In the *Hatcher* case the return was in these words: "Received this *fi. fa.* of L. T. Downing for collection." In the present case, the receipt is of directions to perform the very act which the officer had been directed to perform by an authority superior to that of the plaintiff's attorney. In that case, the execution not being in the hands of the sheriff, he had received no instructions from the court; and therefore, when he acknowledged receipt of the execution for collection, he admitted that from the instant of its receipt he became and was liable to the plaintiff for a due execution of the process. Thus by his entry he was charged with responsibility to the plaintiff. That was a relevant entry. In the case of *Gholston* v. *O'Kelley,* 81 *Ga.* 19, *supra,* the question arose upon the dormancy of an execution issued from a justice's court, and turned upon the competency of the officer to make the return. Upon the rendition of a judgment in a justice's court, executions were issued, and thereafter they were placed in the hands of the sheriff to claim a fund realized by him from a sale of the defendant's property under other process. No return was made by the sheriff upon these justice's court executions, but upon the distribution of the fund, the sheriff paid over to the justice of the peace, to be credited upon the executions, a certain sum of money, and the latter upon the executions made an entry acknowledging receipt upon one of the executions of the sum of $26.00, and on each of the others a receipt to the sheriff for the costs on the same. This was adjudged to be a sufficient entry to prevent the dormancy of these executions. A justice of the peace, under our

law, while a judicial officer in a certain sense, is nevertheless a collecting agent. It is his duty to see to the collection of processes in his court, and to make returns to the plaintiff. The execution issues, directing the officer to collect from the property of the defendant the principal debt, with interest usually, and costs. The plaintiff is entitled to demand from the defendant his principal, interest and costs. Upon the failure of the magistrate to collect the money, he may be liable to rule. *Hitch* v. *Lambright*, 66 *Ga.* 228. Upon this rule, if made absolute, the plaintiff is entitled to have a judgment for his principal and costs. Therefore, to the extent of the costs due to the plaintiff for the use of the officers of court, an acknowledgment of the receipt thereof by the justice of the peace serves to discharge him from the rule. Thus it will be seen that the entry made in the *Gholston* case is a valid entry, a relevant one, and is responsive to the writ. In all of these cases, the public act of the plaintiff, manifested through relevant official returns made by officers competent to execute and return the writ, demonstrates in point of fact that the plaintiff is endeavoring to collect his money. There is no slumbering by the wayside; there is no rainbow chasing; but he is steadily, through the instrumentality of these agents appointed by the law, insisting upon the collection of his money. It will be observed that in the present case, had the sheriff acknowledged the receipt of the execution instead of merely acknowledging receipt of instructions to proceed with the collection of an execution already in hand, the entry would have been such a relevant one as would have served to keep the execution alive. These considerations lead us to the conclusion, that the entry now under review was insufficient in law to prevent the dormancy of the judgment; and the judgment of the court being in accordance with the principles here declared, the same is

*Affirmed.*